IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2014

## OCTAVIOUS TAYLOR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 10-00017-18     W. Mark Ward, Judge**

_____

**No. W2014-00678-CCA-R3-PC  - Filed December 22, 2014**

_____

The petitioner, Octavious Taylor, filed pro se in 2013 a timely petition for post-conviction relief challenging his 2012 Shelby County, guilty-pleaded convictions of aggravated robbery and especially aggravated robbery for which he received an effective 21-year sentence to be served at 100 percent in the Department of Correction.  The petitioner asserted that his guilty pleas were not knowingly, intelligently, or voluntarily made and that his trial counsel rendered ineffective assistance.  Following the appointment of counsel, the filing of an amendment to the petition, and an evidentiary hearing, the post-conviction court denied relief.  In this timely appeal, the petitioner advances his claim of an infirm guilty plea. Because the record supports the decision of the post-conviction court, we affirm its judgment.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and ROGER A. PAGE, JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Octavious Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; William L. Gibbons, District Attorney General; and Rachel E. Willis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In the post-conviction evidentiary hearing, the petitioner testified that his cases had been transferred from juvenile court to criminal court.  He said that he fired his lawyer who "was supposed to be prepping for trial" and that the court appointed two new lawyers

that the petitioner "hardly heard from." The petitioner testified that he saw these lawyers twice and that they declined to file any pretrial motions. He said that the statement he gave to police following his arrest should have been suppressed because he was "under the age" at the time he gave the statement. He added, "I'm not saying I would have won it, but I would have wanted a shot at it."

The petitioner testified that, when his lawyers "c[a]me in," an offer of 13.5 years at 30 percent was "on the table." The petitioner said he declined the offer because he "didn't know some of the circumstances of the case and it was really my first time really dealing with the Justice System." He acknowledged that his first lawyer recommended that he accept the plea offer. When his successor counsel inquired of the State about the availability of the plea offer, counsel learned a few days before the scheduled trial that the offer was no longer viable and that the petitioner would have to go to trial unless he agreed to a "blind" plea of guilty. The petitioner claimed, however, that he believed he would be able to accept the offer of 13.5 years to be served at 30 percent as late as the morning of trial. The petitioner testified that the defense was not ready for trial because counsel had not discussed the case with him. He maintained that counsel told him on the morning of trial that if he entered a blind plea, the release eligibility for both sentences would be 30 percent. He said that, "once [he] got on the stand, [the judge] told [him] that [the] especially aggravated robbery would be at 100%." The petitioner read from the transcript of his guilty plea hearing to the effect that he told the trial judge that he did not understand what the agreement says because he "was under the impression that both of them was at 30%." The petitioner testified that, by the time the trial judge explained the 100-percent sentence to him, he "felt like [he] was already in too deep to turn around."

When asked by the post-conviction judge what the petitioner believed his defense to the charges should have been, he replied, "I can't really say I have one." The petitioner admitted that he had confessed to the two robberies.

The petitioner opined that, had his counsel "handled it differently," he would have accepted the 13.5-year plea offer "from the start."

On cross-examination, the petitioner acknowledged that, after he learned from the trial judge at the plea-submission hearing that the especially aggravated robbery sentence would be served at 100 percent, he replied, "I think I'll run with it, sir," meaning that he intended to "[k]eep forward with the guilty plea, sir." He further acknowledged that he "really didn't want a trial, because [he] felt like [he] would have got more time." The petitioner pressed his view that trial counsel at that time "waited until it was too late to explain to [him] what was really going on." He said that his two successor lawyers were appointed to his case approximately two months before the scheduled trial date and that it

was a "possibility" that the 13.5-year offer was still available when they came on board.

Only one of the petitioner's two successor trial lawyers testified in the evidentiary hearing. He said that he had been practicing about one year when he handled the petitioner's case. Counsel stated that he was appointed after co-counsel had been appointed and that co-counsel was already preparing the case for trial. He stated that he and co-counsel visited the petitioner in jail "a few times" and that he visited the petitioner once by himself. Counsel said that when he came on board, the 13.5-year offer was "still on the table" and that they told the petitioner that taking the offer was in his best interests. Counsel stated that he and co-counsel had concluded that they would not be able to get the petitioner's pretrial statement suppressed and that the offer "was as good as it was going to get for him." Counsel testified that in the two weeks before trial, co-counsel endeavored to explain the plea offer to the petitioner but that the petitioner "didn't want to take the offer."

Counsel testified that the assistant district attorney general who prosecuted the case told the defense that the offer would expire "at the close of business on Friday" before Monday, the day of the scheduled trial. Counsel said that co-counsel went to the petitioner on Friday afternoon to ask the petitioner whether he wanted to take the plea but that the petitioner responded that "there was no such thing as thirteen-point-five years and that the State was trying to trick him." Finally, counsel said, co-counsel "gave up" and told the petitioner that they would just go to trial. Counsel said that he visited the petitioner on the next day, Saturday, and that the petitioner then agreed that if the offered sentence were expressed in terms of 13 years and six months, he would accept it. Counsel told the petitioner that the offer had expired but that he would try to persuade the prosecutor to honor it. On Monday, the prosecutor refused to re-open the offer and insisted on going to trial in lieu of an open guilty plea. Counsel testified that he and co-counsel "tried everything that [they] could to get the thirteen-point-five back. She was not going to budge."

Counsel stated that he and co-counsel explained the development to the petitioner and told him that, given the strength of the State's case, an open plea might engender "sympathy from the Court," leading to a more lenient sentence than he might receive post-trial. Counsel explained that they told the petitioner that they "didn't know what the sentence would ultimately be. That it would ultimately be up to the judge and that it could be anything, within the ranges and that that was essentially what the open plea was."

Counsel said that co-counsel went over the plea change with the petitioner and that counsel did not know whether they had discussed the "percentages."

Counsel testified that he explained to the petitioner why counsel believed that the petitioner's statement could not be suppressed. Despite the advice of counsel and co-

counsel that the petitioner should take the 13.5-year offer, the petitioner continued to reject the offer until Saturday before the Monday trial.

A transcript of the petitioner's guilty-plea hearing was introduced into evidence in the evidentiary hearing.

During post-hearing discussions among counsel on both sides and the post-conviction judge, the petitioner's post-conviction counsel said, "This being a guilty plea I am not even alleging ineffective assistance of counsel. I am going straight for involuntary, unknowing guilty plea."

The post-conviction court expressed its findings of fact and conclusions of law in writing. The court did "not find [the p]etitioner's testimony [to be] credible." The court found that, in light of the information and advice imparted to the petitioner in the plea-submission hearing, the petitioner's claim "that he thought it was too late to change his plea is not worthy of belief." In keeping with its findings, the post-conviction court entered an order denying post-conviction relief.

In this timely appeal, the petitioner argues that his guilty pleas were unknowing and involuntary.

Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

A guilty plea is invalid if made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because 'the due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). "A plea 'may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Claims of involuntary guilty pleas present mixed questions of law and fact. *Lane*

-4-

*v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

In the present case, the record does not contradict the post-conviction court's conclusion that the petitioner failed to prove his claim of unknowing or involuntary guilty pleas by clear and convincing evidence. Starting with the post-conviction court's declining to find that the petitioner's testimony was credible, the record shows that the petitioner had been advised of the probable failure of a motion to suppress his pretrial statement and of the strength of the State's case. The petitioner acknowledged that he had no viable defense. The State's offer for a plea of guilty in exchange for a 13.5-year sentence to be served at 30 percent remained open for at least several weeks and did not expire until the Friday afternoon before the Monday on which trial was to commence. Despite the duration of the offer and despite the recommendations of three attorneys that the petitioner should accept the offer, he declined to do so until it was too late. Relative to the possible open guilty plea, counsel informed the petitioner that the sentences "would ultimately be up to the judge and that [they] could be anything." A potential benefit in submitting an open plea was the possibility of leniency in sentencing. In the plea-submission hearing, the trial court labored to explain the ramifications of the sentences to the petitioner who acknowledged that the court told him that the 21-year sentence for especially aggravated robbery would be served at 100 percent. Following a discussion between the petitioner and the trial judge about the release eligibility, the petitioner expressed his desire to "run with it," to go "forward with the guilty plea." Under these circumstances, the petitioner has failed to prove by clear and convincing evidence that his guilty pleas were unknowing or involuntary.

As a result, we affirm the post-conviction court's order denying relief.

_____
JAMES CURWOOD WITT, JR., JUDGE